T.C. Memo. 2009-141


UNITED STATES TAX COURT


ANDREW MARTIN SPERLING, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2475-08.                    Filed June 16, 2009.


In 2005 P deducted as alimony under I.R.C. sec.
215(a) payments of $8,676 made to or on behalf of his
former spouse pursuant to a property settlement
agreement and divorce decree. R disallowed the alimony
deduction, determining that the payments failed to
satisfy the definition of alimony under I.R.C. sec.
71(b)(1) because, under the agreement and divorce
decree, P's liability to make the payments continues
after the death of P's former spouse contrary to the
requirement of I.R.C. sec. 71(b)(1)(D).

<u>Held</u>: Under the agreement and divorce decree, P
would remain liable to make the payments at issue in
the event of his spouse's death, and therefore such
payments are not alimony under I.R.C. sec. 71(b)(1) and
are not deductible under I.R.C. sec. 215(a).

Andrew Martin Sperling, pro se.

Kathleen K. Raup, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  The Internal Revenue Service (IRS) determined a $1,373 deficiency in petitioner Andrew Martin Sperling's 2005 Federal income tax.  Mr. Sperling petitioned this Court, pursuant to section 6213(a),[1] to redetermine the deficiency.  The issue for decision is whether Mr. Sperling is entitled to deduct $8,676 (or any other amount) under section 215(a), which in turn depends on whether Mr. Sperling was liable to pay this amount "after the death of" his ex-wife within the meaning of section 71(b)(1)(D).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts filed February 23, 2009, and the attached exhibits are incorporated herein by this reference.  At the time that he filed his petition, Mr. Sperling resided in Pennsylvania.

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended.

Divorce Decree and Property Settlement Agreement

In January 2005 Mr. Sperling filed a complaint in divorce against his then-wife Ada Sperling. On January 12, 2005, the Sperlings executed a "Property Settlement Agreement" (Agreement). Paragraph 1 provided that the Agreement was "predicated upon a divorce"; paragraph 3 provided that the Agreement would "continue in full force and effect after such time as a final decree in divorce may be entered"; and paragraph 4 provided that the Agreement would "be incorporated but not merged into any Divorce Decree which may be entered with respect to them, but the Agreement shall nevertheless remain in full force and effect and shall survive such Decree and shall not, in any way, be affected thereby except as provided herein". (Emphasis added.) By its terms the Agreement took effect even before any divorce decree and is said to "survive" and to "continue" in the event of, a divorce decree. On June 30, 2005, a divorce decree was entered in Mr. Sperling's divorce case, which incorporated the terms of the Agreement by reference.

Liability To Make Payments After the Death of Either Spouse

The Agreement (and by extension, the divorce decree, which incorporated the terms of the Agreement by reference) included two provisions that govern the rights of Mr. Sperling and his ex-wife in the event that either or both of them were to die. Paragraph 8 ("GENERAL MUTUAL RELEASE") of the Agreement provides

that the parties release each other and their respective estates from all claims except those claims or obligations arising from the Agreement:

> Husband and Wife each do hereby mutually remise, release, quitclaim and forever discharge the other <u>and the estate of such other</u>, * * * from any and all rights, title and interests, or claims in or against the property * * * of the other <u>or against the estate of such other</u> * * *; or all other rights of a surviving spouse to participate in a deceased spouse's estate * * *, or any rights which either party may have * * * for past, present or future support or maintenance, alimony, alimony pendente lite, [or] counsel fees, * * * <u>except, and only except</u>, all rights, agreements and obligations which may arise <u>under this Agreement</u> * * *.  [Emphasis added.]

Paragraph 22 ("BINDING NATURE OF AGREEMENT") of the Agreement provides that the Agreement shall be binding and shall enure to the benefit of the parties, their respective heirs, executors, and assigns except as specifically excluded by the Agreement:

> This Agreement shall be binding and shall enure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns except as where specifically excluded herein.  The terms of this Agreement which have not been fulfilled at the time of death of either party shall become an obligation of the executor or administrator of the estate of either party unless specifically excluded by this Agreement.

<u>Payments Under the Divorce Decree and Property Settlement Agreement</u>

Under paragraph 10 of the Agreement, Mr. Sperling was obligated to pay his ex-wife $55,000 upon the entry of a divorce decree by (i) purchasing a condominium apartment for her, and (ii) paying the unused balance of the $55,000 to her.

Paragraph 10 described his obligation to execute a deed for a condominium to his ex-wife by stating that the condominium would "be in the name of the Husband only <u>until such time as the divorce decree is entered</u>. <u>At that point</u>, the property shall be transferred into Wife's name only." (Emphasis added.) Likewise, Mr. Sperling's obligation as to the unused balance was to deposit it in an escrow account with Albert Ominksy, his attorney, for his ex-wife, "pending entry of the divorce decree". Evidently, if no divorce decree had been entered, the $55,000 would not have been paid, and the condominium would have remained the property of Mr. Sperling. By an "Amendment and Addendum to the Property Settlement Agreement" (executed on January 12, 2005), the Sperlings agreed that Mr. Sperling's ex-wife would be "responsible for the purchase price and closing costs of $46,823", so that the unused balance due to her from the $55,000 amount was quantified as $8,177.

Under paragraph 11 of the Agreement, Mr. Sperling was obligated to pay certain expenses, including condominium fees, for the period after the purchase of the condominium and before the entry of the divorce decree. Half of these expenses were solely the responsibility of Mr. Sperling, and the other half were to be deducted from his ex-wife's escrow account, which held the unused balance of the $55,000. This obligation is not stated to be contingent upon the entry of a divorce decree. On the

contrary, this term is effective "prior to the date that the divorce decree is entered".

Under paragraph 13 of the Agreement, Mr. Sperling was obligated to pay $1,500 of his ex-wife's attorney's fees. That amount was to be deducted in full from his ex-wife's escrow account. This obligation is not stated to be contingent upon the entry of a divorce decree.

On January 11, 2005--the day before the Agreement was executed, but evidently in anticipation of it--Mr. Sperling paid $1,500 to Michael J. Rutenberg, his ex-wife's attorney, and $6,677 to his own attorney to be held in escrow for his ex-wife. Mr. Sperling thereafter paid $196 of condominium fees for his ex-wife's benefit on four separate occasions in 2005--January 20, February 1, March 4, and March 28--totaling $784. His attorney thereafter assumed that $800 in condominium fees had been paid, rather than $784, and he therefore reduced the escrow account by $400 (i.e., half of $800) from $6,677 to $6,277 and paid this reduced amount to Mr. Sperling's ex-wife on August 5, 2005--more than a month after the divorce decree was entered. In summary, in addition to the transfer of the condominium, Mr. Sperling paid the following amounts to or for the benefit of his ex-wife pursuant to the Agreement and the divorce decree:

| Property Transferred | Amount | Date of Transfer |
|----------------------|--------|------------------|
| Attorney's fees | $1,500 | 1/11/2005 |
| Condominium fees | 196 | 1/20/2005 |
| Condominium fees | 196 | 2/1/2005 |
| Condominium fees | 196 | 3/4/2005 |
| Condominium fees | 196 | 3/28/2005 |
| Cash from escrow account | 6,277 | 8/5/2005 |
| Total | $8,561 | |

Notice of Deficiency

On his 2005 Form 1040, U.S. Individual Income Tax Return, Mr. Sperling claimed an alimony deduction of $8,676[2] for his payment from the escrow account and payment of condominium and attorney's fees. By a statutory notice of deficiency dated October 29, 2007, the IRS disallowed the alimony deduction and determined a $1,373 deficiency in Mr. Sperling's 2005 Federal income tax.

OPINION

I.  Definition of Alimony

Section 215(a) allows a deduction to the paying spouse for the alimony or separate maintenance payments made during the paying spouse's tax year that are includable in the recipient

---

[2] Mr. Sperling's payment from the escrow account of $6,277, plus his payment of condominium fees of $784 and attorney's fees of $1,500 totals $8,561. However, Mr. Sperling apparently miscalculated the total of these payments as $8,676 when he claimed an alimony deduction in that amount on his 2005 Form 1040.

spouse's gross income under section 71(a).  Whether a payment constitutes alimony within the meaning of sections 71(a) and 215(a) is determined by reference to section 71(b)(1), which provides:

>    SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>    (1)  In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
>    (A)  such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
>    (B)  the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
>    (C)  in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
>    (D)  there is <u>no liability</u> to make any such payment for any period <u>after the death of the payee spouse</u> and there is <u>no liability</u> to make any payment (in cash or property) as a substitute for such payments <u>after the death of the payee spouse</u>. [Emphasis added.]

Respondent concedes that the Mr. Sperling's payment from the escrow account and payment of condominium and attorney's fees satisfy the first three subparagraphs of section 71(b)(1).  The parties agree that the only issue is whether the payments at

issue satisfy subparagraph (D), i.e., whether Mr. Sperling's liability to make the payments would have survived the death of his ex-wife.

II. Payments Would Survive the Recipient Spouse's Death

Mr. Sperling's payment from the escrow account and payment of condominium and attorney's fees are not alimony under section 71(b)(1) or deductible under section 215(a) if he would have remained liable for the payments if his ex-wife had died before they were made.  Sec. 71(b)(1)(D).  In deciding whether payments are alimony under section 71(b)(1)(D), we examine the language of the divorce or separation instrument to ascertain whether it contains a condition that terminates the paying spouse's liability upon the death of the recipient spouse, and, if it does not, whether State law applies such a condition in cases where the instrument is silent.  See Hoover v. Commissioner, 102 F.3d 842, 847 (6th Cir. 1996), affg. T.C. Memo. 1995-183; Stedman v. Commissioner, T.C. Memo. 2008-239.

Mr. Sperling contends that paragraph 8 of the Agreement ("GENERAL MUTUAL RELEASE") contains such a condition and terminates his liability to make the payments at issue upon the death of his ex-wife.  However, Mr. Sperling misconstrues paragraph 8, which merely provides that the parties release each other and their respective estates from all claims "except, and only except, all rights, agreements and obligations which may

arise <u>under this Agreement</u>".  (Emphasis added.)  Paragraph 8 does not even address Mr. Sperling's obligation to make payments under the Agreement, let alone release him from that obligation in the event of his ex-wife's death.

Respondent contends that paragraph 22 of the Agreement ("BINDING NATURE OF AGREEMENT") explicitly provides that Mr. Sperling remains liable for the payments at issue upon the death of his ex-wife.  We agree.  Paragraph 22 provides that the Agreement "shall be binding and shall enure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns except as where specifically excluded herein."  No other provision in the Agreement specifically excludes any of the payments at issue from the mandate of paragraph 22.  Therefore, the Agreement provides that Mr. Sperling's liability to make the payments at issue survives the death of his ex-wife.

It should be noted that Mr. Sperling's liability to make the payment from the escrow account to his ex-wife is not governed by the Agreement per se, because the Agreement's provision for that payment was effective only upon the entry of a divorce decree. Instead, the liability is governed by the divorce decree, which incorporated the Agreement by reference.  Accordingly, with respect to that payment, we must determine whether the divorce decree--not the Agreement--contains a condition that terminates

Mr. Sperling's liability to make the payment upon the death of his ex-wife. However, the fact that the payment is governed by the divorce decree does not alter Mr. Sperling's liability "after the death of" his ex-wife, because the divorce decree incorporated the entire Agreement, including paragraph 22, by reference. Therefore, Mr. Sperling's liability to make the payment from the escrow account under the divorce decree would survive the death of his ex-wife.

It should also be noted that the fact that Mr. Sperling paid the condominium fees before the entry of the divorce decree and paid the attorney's fees before the entry of the divorce decree and the execution of the Agreement does not, for purposes of section 71(b)(1)(D), alter his liability to make those payments "after the death of" his ex-wife. As stated above, we examine the language of the divorce or separation instrument to ascertain whether it contains a termination upon death condition; the fact that payments were in fact made simultaneously with or immediately before the issuance of a decree or the execution of an agreement is irrelevant in determining whether section 71(b)(1)(D) is satisfied. See Webb v. Commissioner, T.C. Memo. 1990-540.

Therefore, pursuant to the Agreement and the divorce decree, Mr. Sperling's liability to make the payments at issue survives

the death of his ex-wife, and those payments are not alimony under section 71(b)(1) or deductible under section 215(a).

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.