T.C. Memo. 2012-107

UNITED STATES TAX COURT

DAVID LAPOINT, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9927-08.                          Filed April 12, 2012.

<u>Milton Shaiman</u>, for petitioner.

<u>Michelle L. Maniscalco</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies of $122,281 and

$185,068 and penalties under section 6662(a)[1] of $24,456 and $37,014 with respect

--------

[1]All section references are to the Internal Revenue Code of 1986, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

to petitioner's 2002 and 2004 Federal income tax, respectively. After concessions,[2] the issues for decision are: (1) whether petitioner is entitled to deductions for alimony of $294,749 and $385,964 for taxable years 2002 and 2004, respectively and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a) for 2002 and 2004.

## FINDINGS OF FACT[3]

Some facts have been stipulated and are incorporated herein by this reference. At the time the petition was filed, petitioner resided in New York.

---

[2]Petitioner has not disputed, and therefore is deemed to have conceded, see Rule 34(b)(4), respondent's determination in the notice of deficiency that his itemized deductions claimed for 2002 are limited by sec. 68, resulting in an $11,316 increase in taxable income and an allowance of the standard deduction for that year. Petitioner is also deemed to have conceded respondent's determination that the exemption amounts for 2002 and 2004 are reduced pursuant to sec. 151(d)(3), resulting in increases to his taxable income of $3,000 and $3,100, respectively. Petitioner is further deemed to have conceded respondent's determination that he had unreported taxable interest income of $158,615 for 2004 and that his filing status for 2002 is "married filing separately".

[3]Petitioner argues that respondent bears the burden of proof with respect to all factual issues in this proceeding pursuant to sec. 7491(a). However, the burden of proof has no practical consequence in this case, as there is no evidentiary tie. Our findings with respect to all factual issues are based upon a preponderance of the evidence. See Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Knudsen v. Commissioner, 131 T.C. 185, 188-189 (2008); see also Geiger v. Commissioner, 279 Fed. Appx. 834, 835 (11th Cir. 2008), aff'g T.C. Memo. 2006-271.

On October 20, 1990, petitioner, a professional baseball player, married Laura Jean Clear. On April 2, 1991, petitioner and Ms. Clear entered into a postnuptial agreement which provided inter alia that: (1) Petitioner assigned to Ms. Clear his interest in any funds he might receive resulting from the resolution of an arbitration between the Major League Baseball Players Association and the owners of 26 Major League Baseball clubs (MLB proceeds); (2) petitioner agreed to deposit $50,000 annually in a bank account owned by Ms. Clear as long as he received compensation from playing or participating in baseball; and (3) petitioner agreed to maintain health insurance for Ms. Clear and any minor children born to them and to pay for their uninsured medical expenses.

The postnuptial agreement described petitioner's assignment of the MLB proceeds to Ms. Clear as follows:

> Dave [petitioner] agrees to provide financial security for Laura [Ms. Clear] and the children born as issue of their marriage with funds he will receive from the Baseball Players Association known as the "baseball collusion" moneys. Dave does hereby agree to, and does hereby, assign to Laura all of his right, title and interest in and to said baseball collusion moneys, which monies shall be used by Laura for her support, maintenance and education, and the support, maintenance and education of the children born as issue of the parties' marriage.

The postnuptial agreement further provided that, in the event of divorce, its provisions would constitute the sole agreement applicable to the division or

distribution of separate and marital property, and that Ms. Clear (1) relinquished any right to any equitable distribution of marital property other than pursuant to the terms of the postnuptial agreement; and (2) released petitioner from any claim for maintenance except as provided in the postnuptial agreement. The postnuptial agreement also provided that, in the event of divorce, Ms. Clear was entitled to retain ownership of the MLB proceeds and the $50,000 annual payments, and petitioner remained obligated to assign the MLB proceeds and to make the annual $50,000 payments and health insurance payments.

The postnuptial agreement also contained the following provision: "Binding on Heirs. This post-nuptial agreement shall inure to the benefit of, and be binding upon, the parties hereto, their heirs, executors, legal representatives and assigns."

The postnuptial agreement obligated each party to execute any additional instruments that the other party reasonably required for the purpose of giving full force and effect to the provisions of the agreement. On August 13, 1993, petitioner executed an assignment of his interest in the MLB proceeds to Ms. Clear "In accordance with the Post-Nuptial Agreement * * * [of] April 2, 1991."

On July 31, 2002, Ms. Clear filed for divorce. On May 13, 2004, the Supreme Court of the State of New York rejected petitioner's claim to have the postnuptial agreement set aside and instead granted Ms. Clear's motion to have the

agreement incorporated into the judgment of divorce. On June 16, 2005, petitioner and Ms. Clear were divorced by a judgment of the Supreme Court of the State of New York. The judgment incorporated the postnuptial agreement and provided that the real and personal property of the couple (with one minor exception) would be distributed in accordance with the agreement.

On his Federal income tax returns for 2002 and 2004 petitioner reported payments of MLB proceeds of $294,749 and $385,964, respectively, as gross income and deducted corresponding amounts as alimony paid. The returns were prepared by Milton Shaiman, a certified public accountant and member of the Tax Court bar, who advised petitioner that the payments were deductible as alimony. Respondent subsequently disallowed the alimony deductions in a statutory notice of deficiency.

## OPINION

Section 215(a) allows a deduction to the paying spouse for the alimony or separate maintenance payments made during the paying spouse's taxable year that are includible in the recipient spouse's gross income under section 71(a). Whether a payment constitutes alimony within the meaning of sections 71(a) and 215(a) is

determined by reference to section 71(b)(1), which defines an "alimony or separate

maintenance payment" as:

any payment in cash if--

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Respondent concedes that the requirements of section 71(b)(1)(A) and (B) are met with regard to the payments at issue.[4]  Respondent concedes that petitioner

---

[4]Respondent also concedes on brief that the payments at issue were made pursuant to petitioner's assignment of the MLB proceeds to Ms. Clear.  Thus, there is no issue whether any portion of the amounts deducted as alimony consisted of payments petitioner made to Ms. Clear in discharge of his obligation to pay her $50,000 in any year he was compensated for playing or participating in baseball.

and Ms. Clear were not members of the same household for purposes of section 71(b)(1)(C) with respect to the 2004 payments but points to the absence of any evidence concerning their living arrangements during the first seven months of 2002 before Ms. Clear filed for divorce on July 31, 2002. We need not resolve this issue, however, because respondent further contends, and we agree, that the payments at issue fail to satisfy the requirement of section 71(b)(1)(D) that there be no liability to make the payments for any period after the death of the payee spouse.

In deciding whether payments meet the requirements of section 71(b)(1)(D), we examine the divorce or separation instrument to ascertain whether it contains a condition that terminates the payor spouse's liability upon the death of the recipient spouse, and, if it does not, whether State law supplies such a condition in cases where the instrument is silent. See Hoover v. Commissioner, 102 F.3d 842, 847 (6th Cir. 1996), aff'g T.C. Memo. 1995-183; Sperling v. Commissioner, T.C. Memo. 2009-141; Stedman v. Commissioner, T.C. Memo. 2008-239.

The plain terms of the postnuptial agreement assign petitioner's interest in the MLB proceeds to Ms. Clear. Because by its terms the postnuptial agreement inures to the benefit of her "heirs, executors, legal representatives and assigns," Ms. Clear's right to receive the MLB proceeds would survive her death. New York law

confirms that a payment characterized as support or maintenance may, by the agreement of the parties, survive the death of the payor spouse, see In re Riconda, 688 N.E.2d 248, 251 (N.Y. 1997), and this principle has been extended to cases involving the death of the payee spouse, see John G. v. Lois G., 815 N.Y.S.2d 494 (N.Y. Sup. Ct. 2006) (unpublished opinion). Consequently, since petitioner would have been liable to pay over the MLB proceeds after Ms. Clear's death to her heirs, the payments are not alimony for purposes of sections 71(b) and 215(b).

Petitioner contends that the payments are alimony, and thus deductible by him, because they are described in the postnuptial agreement as for Ms. Clear's "support, maintenance and education" and because Ms. Clear waived any claim for support and maintenance in exchange for the payments. Thus, petitioner argues, since the payments were intended to provide maintenance and support for Ms. Clear, they are in substance alimony, even though that word is not used in the postnuptial agreement.

We disagree. We note first that in the postnuptial agreement Ms. Clear also waived her right to an equitable distribution of the marital property (except as provided in the agreement), which suggests that petitioner's assignment of the MLB proceeds constituted both maintenance and a property settlement. More

fundamentally, however, petitioner's argument that the payments are alimony because they were intended as support misses the point that the section 71(b) definition of alimony is designed "to eliminate * * * subjective inquiries into intent * * * in favor of a simpler, more objective test." Hoover v. Commissioner, 102 F.3d at 845. Instead, section 71(b) substitutes an objective test, a "central" tenet of which is that the payments do not survive the death of the payee spouse. Id. at 845-846. Since the obligation to make the payments at issue would have survived Ms. Clear's death, they are not alimony for Federal income tax purposes and are therefore not deductible by petitioner.

## Section 6662 Accuracy-Related Penalty

Respondent determined 20% accuracy-related penalties under section 6662 of $24,456 and $37,014 for 2002 and 2004, respectively, on the basis of negligence and substantial understatement of income tax. See sec. 6662(a) and (b)(1) and (2). On brief, respondent contends only for the latter basis.

A 20% accuracy-related penalty applies to any portion of an underpayment of tax required to be shown on a return that is attributable to any substantial understatement of income tax. An understatement for this purpose is generally the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return. Sec. 6662(d)(2)(A).

An understatement is substantial where it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). However, a section 6662(a) penalty generally is not imposed on any portion of an underpayment as to which the taxpayer shows there was reasonable cause and that he acted in good faith. Sec. 6664(c)(1).

The Commissioner bears the burden of production with respect to a taxpayer's liability for any penalty, sec. 7491(c), and if he satisfies that burden with sufficient evidence that it is appropriate to impose a penalty, the taxpayer bears the burden of proof with respect to any exculpatory factors such as reasonable cause, see Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

In view of the fact that we have sustained respondent's disallowance of petitioner's claimed alimony deductions for 2002 and 2004, as well as petitioner's failure to contest respondent's determination that he had unreported taxable interest income of $158,615 for 2004, the resulting deficiencies (and understatements) would equal $122,281 and $185,068 for 2002 and 2004, respectively.[5] These amounts exceed the greater of 10% of the tax required to be shown on the returns or

---

[5] These deficiency figures also take into account computational adjustments and respondent's uncontested determination of filing status for 2002.

$5,000. Consequently, respondent has satisfied his burden of production for each year.

Although reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith, it will generally so demonstrate when, considering all the circumstances, the reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6664-4(b)(1), Proced. & Admin. Regs.; see also United States v. Boyle, 469 U.S. 241, 251 (1985). The taxpayer's education, sophistication and business experience are relevant in determining whether the reliance on professional advice was reasonable. Sec. 1.6664-4(c)(1), Proced. & Admin. Regs. Reliance on professional advice is generally reasonable where it is shown that "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neontatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

On this record, we are satisfied that petitioner, a professional baseball player, reasonably relied on the professional advice of his return preparer, a certified public accountant and attorney with experience in tax litigation. We are satisfied that in preparing the returns, Mr. Shaiman was given the pertinent facts and documents,

including the postnuptial agreement, and counseled petitioner that he was entitled to deduct the MLB payments he assigned to Ms. Clear. Accordingly, we hold that petitioner had reasonable cause with respect to the portions of the 2002 and 2004 underpayments attributable to his deductions of the MLB payments for those years that he assigned to Ms. Clear.

That does not end the matter with respect to 2004, however. In that year, respondent also determined that petitioner failed to report $158,615 of taxable interest income. Petitioner has not addressed that adjustment at all, either to contest it or to contend that he had reasonable cause for the failure to report the income. Accordingly, we conclude that, to the extent the failure to report the interest income in 2004 gives rises to a substantial understatement as defined in section 6662(d)(1)(A) and (2)(A), petitioner is liable for an accuracy-related penalty under section 6662(a) for the portion of the underpayment attributable thereto.

We have considered all remaining arguments the parties made and, to the extent not addressed, we find them to be irrelevant or meritless.  To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.